IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DENNIS CUNNINGHAM,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CIVIL NO. 09-1019-GPM |
| | ) |
| **UTI INTEGRATED LOGISTICS, INCORPORATED,** | ) ) |
| | ) |
| **Defendant.** | ) |

# **MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

Plaintiff Dennis Cunningham (Cunningham) was terminated by his employer, Defendant UTi Integrated Logistics, Incorporated (UTi), on August 21, 2009, allegedly for using abusive language and for other inappropriate conduct (Doc. 2-2, p. 1). Cunningham alleges he was terminated wrongfully, without any disciplinary procedures and in retaliation for his prior union affiliation (*Id.* at pp. 2-4). As a result, Cunningham filed a Complaint in the Circuit Court of Madison County on October 27, 2009, alleging: (1) Breach of Contract, (2) Retaliatory Discharge, and (3) Defamation (Doc. 2-2, pp. 1-5). UTi properly removed this action to this Court on December 8, 2009, based on complete diversity between the parties (Doc. 2, p. 1, *citing* 28 U.S.C. §§ 1441 and 1332). Then, on December 15, 2009, UTi moved to dismiss Cunningham's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief may be granted (Doc. 7).

In its motion, UTi disputes all of Cunningham's claims arguing that: (1) Cunningham's Complaint is "devoid of any allegation establishing the existence of a contract" or any of the other

elements necessary to establish a breach of contract; (2) Cunningham fails to state a claim for retaliatory discharge because "his claim is not premised on any public policy interest recognized by Illinois courts"; and (3) Cunningham fails to plead one of "the five recognized categories for defamation *per se* claims" (Doc. 7, ¶ 2).[1] Cunningham responded on January 12, 2010, and now the Court — after carefully reviewing the pleadings and having determined that a hearing is unnecessary — rules as follows.

## **ANALYSIS**

It is a plaintiff's burden to plead sufficient factual matter to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 129 S. Ct.1937, 1949 (2009), *citing Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 556 (2007). Under *Iqbal*, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, *citing Twombly*, 550 U.S. at 556. The Seventh Circuit Court of Appeals, in light of *Iqbal* and its progeny, has provided further guidance:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third … courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Finally, "'determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th

---

[1] UTi also argues that Cunningham failed to "meet the heightened pleading standards required to maintain a defamation *per se* claim" (Doc. 7, ¶ 2). While Illinois does require a heightened pleading standard for defamation *per se* claims, that procedural standard "does not apply in federal court." *Muzikowski v. Paramount Pic. Corp.*, 322 F.3d 918, 926 (7th Cir. 2003). As the Court will discuss below, however, in federal court, the heightened pleading standard does, in fact, apply to defamation *per quod* actions.

Cir. 2009), *quoting Iqbal*, 129 S. Ct. at 1950.

Cunningham's Complaint fails to set forth an adequate factual basis to make any of his claims plausible. As an initial matter, in his response Cunningham fails to accurately cite the standard applicable to a Rule 12(b)(6) motion to dismiss. Cunningham asserts that he "need not provide details"; this statement is far too general and proves too much (Doc 14, p. 2, *citing*, Fed.R.Civ.P. 8(a), which, ironically, makes no mention of Cunninham's proposition). Cunningham then curiously cites an irrelevant and outdated standard for a motion for judgment on the pleadings and later, he cites a case dealing with the factual content required in the employment discrimination context — a context irrelevant to any of his claims (*Id.*). Finally, Cunningham fails to cite the Supreme Court's recent opinion dealing with Rule 12(b)(6) pleading requirements, *Ashcroft v. Iqbal*, 129 S. Ct.1937, 1949 (2009). In short, Cunningham's attempt to lay out the current pleading standard misses the mark. More importantly, for the reasons outlined in greater detail below, Cunningham's factual pleadings fail to make any of his claims for relief plausible.

### Breach of Contract

"Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.'" *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). In Illinois, when an employee is hired without a fixed term and, "absent a specific contract to the contrary, employment contracts are terminable at will." *Harris v. Eckersall*, 771 N.E.2d 1072, 1075 (Ill.App.Ct. 2002). Moreover, "[b]ecause an at-will employee can be terminated at any time for any reason or no reason, an at-will employee has no property interest in continued employment." *Id.*

Here, Cunningham's breach of contract claim runs head-on into both Illinois' at-will employment doctrine and UTi's Administration Manual (Manual). In support of his breach of contract claim, Cunningham references certain employment policies set forth in the Manual. These policies, which he signed, expressly and repeatedly state in bold, underlined and all capital letters: "**THIS IS NOT A CONTRACT OF EMPLOYMENT, EMPLOYMENT REMAINS AT-WILL AND MAY BE TERMINATED BY EITHER PARTY AT ANY TIME, WITH OR WITHOUT NOTICE OR REASON**" (Doc. 8-1, pp. 5-9).[2]

Nevertheless, Cunningham attempts to argue that he had a valid employment agreement with UTi because "the disclaimers on the policies are insufficient to prevent the policies from being binding upon the defendant" (Doc. 14, p. 4). In support of this proposition, Cunningham cites outdated Illinois case law, some of which has been expressly discredited by the Seventh Circuit Court of Appeals. *See, e.g., Perman v. ArcVentures, Inc.*, 554 N.E.2d 982 (Ill.App.Ct. 1990); *contra Workman v. UPS, Inc.*, 234 F.3d 998, 1001 (7th Cir. 2000), *Freeman v. Chicago Park Dist.*, 189 F.3d 613, 617 (7th Cir. 1999). Moreover, Cunningham conveniently fails to acknowledge cases such as *Habighurst v. Edlong Corp.*, where the Illinois Appellate Court found, "[t]he weight of authority in this state has held the existence of disclaiming language in an employee handbook to preclude the formation of a contract." 568 N.E.2d 226, 228 (Ill.App.Ct. 1991)(collecting cases). Cunningham therefore has not put forth any evidence, or cited any valid case law, to demonstrate why these express disclaimers should not apply to him or nullify his breach of contract claim.

At bottom, Cuningham's employment was "at-will" and the employment policies he

---

[2] This Court may consider any documents that are attached to UTi's Motion to Dismiss which are "referred to in the plaintiff's complaint and are central to [his] claim." *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

references expressly disclaimed the creation of any contract or additional duties on the part of UTi. Further, Cunningham's promissory estoppel argument — which he raised for the first time in his response — has no merit because there was no "unambiguous promise" contained in any of the employment policies that he cites. As such, Cunningham has failed to plead sufficient factual matter to establish a plausible breach of contract claim.

### Retaliatory Discharge

An employee can state a valid retaliatory discharge claim under Illinois' common law if he alleges he was discharged from his employment in retaliation for certain activities and "that the discharge violated the clear mandate of public policy." *Callahan v. Edgewater Care & Rehab. Center, Inc.* 872 N.E.2d 551, 552-53 (Ill.App.Ct. 2007), *citing Barr v. Kelso-Burnett Co.*, 478 N.E.2d 1354 (Ill. 1985). UTi correctly notes that, in Illinois, the public policy exception to the at-will employment doctrine is extremely narrow and it has been limited primarily to two contexts: (1) discharge for exercising rights pursuant to the Illinois Workers' Compensation Act (820 ILCS 305/1 et seq.) or (2) discharge for "whistleblowing" activities, such as reporting illegal conduct. *See Irizarry v. Ill. Cent. RR. Co.*, 879 N.E.2d 1007 (Ill.App.Ct. 2007), 1010-12; *citing Sutherland v. Norfolk Southern Rlwy Co.*, 826 N.E.2d 1021, 1029 (Ill.App.Ct. 2005). In *Sutherland*, the Illinois Appellate Court refused to imply a private right of action from the public policies embodied in the Federal Employers' Liability Act (FELA) because of the Illinois Supreme Court's "clearly expressed disinclination … to expand the scope of protection offered by Illinois law of retaliatory discharge." *Sutherland*, 826 N.E.2d 1021 at 1029.

Similar to his breach of contract claim, Cunningham has not cited any case recognizing a valid common law retaliatory discharge claim based on union activity. In support of his proposition

that "the protection of union membership and affiliation is a clearly mandated public policy," Cunningham cites the National Labor Relations Act (29 U.S.C. § 151) and the Illinois Employment Contract Act (820 ILCS 15/1, et seq.) (Doc. 14, p. 6). However, like the *Sutherland* Court, this Court refuses to imply a private right of action from the public policies that either of these statutes may embody. *Id.* Unfortunately, for Cunningham, no Illinois state or federal court has recognized union affiliation as a clearly mandated public policy protected by the tort of retaliatory discharge.

Further, this Court is not the correct forum in which to argue for the tort's expansion. A "federal court is not the place to press innovative theories of state law," *Anderson v. Marathon Petro. Co.*, 801 F.2d 936, 942 (7th Cir. 1986), because federal courts have "limited discretion … with respect to untested legal theories brought under the rubric of state law." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007). Indeed, this Court is *Erie*-bound by the substantive opinions of the Supreme Court of Illinois. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Republic Tobacco Co. v. North Atl. Trading Co.*, 381 F.3d 717, 731 (7th Cir. 2004) ("[A]s a federal court sitting in diversity, we are obligated to apply Illinois law as announced by the Illinois Supreme Court."). As such, Cunningham has failed to state a cognizable claim for retaliatory discharge.

**Defamation**

In order to show an actionable defamation claim, a plaintiff must prove: (1) the defendant made a false statement concerning the plaintiff; (2) the defendant made an unprivileged publication of the defamatory statement to a third party; and (3) the plaintiff suffered damages as a result. *Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 532 (7th Cir. 2009) (citations omitted). "Illinois recognizes two types of defamation: defamation *per se* and defamation *per quod*." *Id*. Where the defamatory character is apparent on the face of the communication — that is,

the statement is so obviously harmful that injury to the plaintiff's reputation can be presumed — the statement is defamatory *per se*. *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009). By contrast, "[s]tatements are considered defamatory *per quod* if the defamatory character of the statement is not apparent on its face, and extrinsic facts are required to explain its defamatory meaning." *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 206 (Ill. 1992).

Illinois courts recognize five categories of defamatory *per se* statements: (1) words imputing that a person has committed a crime; (2) words imputing that a person is infected with a loathsome communicable disease; (3) words imputing an inability to perform or a lack of integrity in performing employment duties; (4) words imputing inability or otherwise prejudicing someone in his or her profession; and (5) words imputing that a person has engaged in adultery or fornication. *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). Of course, not all allegedly defamatory statements are defamatory *per se*. "A statement that is reasonably capable of an innocent construction is not *per se* defamatory." *Lott*, 556 F.3d at 568. Further, "the meaning of a statement is not a fact for the jury to find, but a question of law to be resolved by the court. To discern the meaning, courts must draw from the context of the statement and give the words their natural and obvious meaning." *Lott*, 556 F.3d at 568 (citations and internal quotations omitted).

Here, Cunningham alleges that his employer, UTi, made false statements to third parties (ostensibly, other co-workers) concerning his use of profanity and racial slurs, and as a result, his business reputation was injured (Doc 2-2, ¶ 28). Thus, Cunningham is claiming that UTi's statements are defamatory *per se* under either the third or fourth category noted above. Under these two categories, in Illinois, the comments must have related to job performance. More specifically, "to succeed, the plaintiff must have been accused of lacking *ability in his trade* or doing something

bad *in the course of carrying out his job.*" *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005) (collecting cases). "Conversely, attacks related to personal integrity and character have not been deemed defamatory *per se*." *Id.*

In this case, like the plaintiff in *Cody*, UTi's alleged statements did not disparage Cunningham's skills as a warehouse employee, but were critical of his personal integrity. The statements at issue — that Cunningham made racially derogatory remarks to other individuals and physically intimidated co-workers and third parties — related more to Cunningham's personal character (by impugning that he was a bigot and a bully) than to his work or professional traits. "In some cases, personal integrity is so intertwined with job skills, that an attack upon it could constitute defamation *per se*." *Id.* at 858. This, however, is not such a case because a warehouse employee, like the sales manager plaintiff in *Cody*, does not require a degree of personal integrity "above and beyond that required for any job."[3] *Id.* As a result, Cunningham has not pled sufficient factual content to make his defamation *per se* claim plausible.

UTi's accusation that Cunningham used racial slurs, however, could constitute defamation *per quod*. *See Taylor v. Carmouche*, 214 F.3d 788, 793-794 (7th Cir. 2000). The problem here is that Cunningham has pled only general facts. To maintain an action for defamation *per quod*, a plaintiff must allege extrinsic facts to prove the defamatory nature of the statement and "plead specific damages of actual financial injury." *Muzikowski v. Paramount Pic. Corp.*, 322 F.3d 918, 927 (7th Cir. 2003), *citing* Fed. R. Civ. P. 9(g); *see also Fedders Corp. v. Elite Classics*, 279 F. Supp. 2d 965, 969 (S.D. Ill. 2003). Cunningham makes no specific allegations based on extrinsic

---

[3] Additionally, Cunningham failed to argue that personal integrity was significantly "intertwined" with his job requirements.

facts, nor has he pled or proved any special damages. Indeed, UTi argues that Cunningham cannot prove such damages because "his Complaint confirms that he was terminated *prior to* the alleged defamatory statements being made by Defendant" (Doc. 18, p. 5). Nevertheless, in spite of these deficiencies and potential impediments, the Court will give Cunningham the opportunity to amend his complaint as to his defamation *per quod* claim only.

## CONCLUSION

Accordingly, UTi's Motion to Dismiss (Doc. 7) is **GRANTED in part**. The Court **DISMISSES** Plaintiff Dennis Cunningham's breach of contract, retaliatory discharge and defamation *per se* claims **with prejudice**. Regarding his defamation *per quod* claim, the Court **GRANTS** Cunningham additional time, up to and including **May 19, 2010**, to file an amended complaint that complies with Fed. R. Civ. P. 9(g) and the specific requirements outlined above. Failure to do so will result in the dismissal of this entire action with prejudice.

**IT IS SO ORDERED.**

DATED: 04/19/10

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge